UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| **Bellavia Blatt, P.C.,** | |
| **Plaintiff,** | Case No. _____ |
| v. | |
| | Judge _____ |
| **General Motors LLC** | |
| | Magistrate Judge _____ |
| and | |
| **Nancy Baird,** | |
| **Defendants.** | **DEMAND FOR A JURY TRIAL** |

## COMPLAINT

*Pro Se* Plaintiff Bellavia Blatt, P.C., complaining of the defendants General Motors LLC and Nancy Baird (collectively, the "Defendants") herein, respectfully sets forth and alleges, upon information and belief, as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff Bellavia Blatt, P.C. ("BBPC") is a domestic professional corporation duly organized and existing by virtue of the laws of the State of New York for the practice of law, with offices at 200 Old Country Road, Suite 400, Mineola, New York 11501 where it maintains its principal place of business.

2. Defendant General Motors LLC ("GM") is a limited liability corporation duly organized and existing under the laws of the State of Delaware and duly authorized to conduct business in the State of New York.

1

3. Defendant Nancy Baird ("Baird") is an employee and agent of GM. She is a citizen of the State of Michigan where she resides. At all relevant times, Baird was acting withing the scope of her employment with GM.

4. There is complete diversity of citizenship between the parties, and the amount in controversy is an amount exceeding $75,000, exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a) because, among other things, Plaintiff's place of business is located in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### Nature of Claims

6. This is an action for, among other things, defamation and tortuous interference with contractual relations and/or prospective business relations.

7. Defendants' actions have caused and continue to cause Plaintiff to suffer substantial economic damages, including, but not limited to the loss of past and future income.

8. Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff as to entitle it to an award of punitive damages and an award of attorneys' fees and costs in this action.

9. Defendants have per se defamed Plaintiff by communicating false and defamatory statements and communications concerning Plaintiff's services and products.

10. Defendants made the defamatory communications with knowledge of their falsity, or with a reckless disregard for whether such statements were true or false.

11. The false and defamatory communications were made willfully, maliciously, with knowledge of their falsity and with the intent of harming Plaintiff's reputation, industry standing, business and trade.

## Facts

### *BPPC's Warranty Reimbursement Program Practice*

12. GM operates a warranty reimbursement program whereby it reimburses GM franchised new motor vehicle dealerships for parts and labor expended to fix GM vehicles under warranty.

13. BBPC is the endorsed partner for certain state and local motor vehicle dealer associations for assistance with warranty reimbursement programs.

14. Whereas there are over 17,000 franchised new motor vehicle dealerships throughout the United States and BPPC is the only law firm providing this service on a national basis.

15. BBPC represents certain franchised new motor vehicle dealerships participating in the GM warranty reimbursement program.

16. The warranty reimbursement program is subject to statutory regulation in many states to protect motor vehicle dealerships from unfair strong-arming by motor vehicle manufacturers, distributors and/or factory branches.

*Findlay Submits Reimbursement & Rate Increase Requests to GM Utilizing BBPC*

17. CJA Automotive, LLC dba Findlay Chevrolet ("Findlay") in Nevada is one franchised new motor vehicle dealership that participates in the GM warranty reimbursement program.

18. Findlay is one of BBPC's clients.

19. On October 6, 2020, via two separate letters, Findlay submitted reimbursement requests for parts and repairs (*i.e.*, labor) to GM via CCA World Headquarters, 6200 Grand Pointe Drive, Grand Blanc, MI 48439, Mail Code: 484392220, Attn: Nancy Baird R2WS1701.

20. The letters requested an increase from Findlay's previous reimbursement rates in accordance with the Nevada Franchised Motor Vehicle Dealer Act, Nev. Rev. Stat. Ann. § 482.36385 ("Nevada statute"), which requires that GM provide Findlay a fair and reasonable reimbursement based upon 100 sequential non-warranty, customer-paid service repair orders written within a 90-day period covering repairs made no more than 180 days before the submission of the request.

*Baird's Letter 1*

21. On December 1, 2020, Defendants sent a letter to Findlay ("Baird Letter 1") rejecting Findlay's request for an increase.

22. Baird Letter 1 states that Findlay's "request for a change in the reimbursement rate was approved." Characterizing GM's action as an "approval" of Findlay's request for increased reimbursement rates is factually false as, among other things, the GM

4

unilaterally directed 76.85% labor rate was a <u>reduction</u> from Findlay's previous year's rates of 77.8%.

### *BBPC Responds to GM and Baird On Behalf of Findlay*

23. In response to Baird Letter 1, Christopher C. Corwin, Esq., an attorney at BBPC, sent a letter on behalf of Findlay to Defendants via General Motors Company, Customer Care and Aftersales World Headquarters, 16200 Grand Pointe Drive, Grand Blanc, Michigan 48439, on February 9, 2021 (the "BBPC Letter").

24. The BBPC Letter informed GM of the following: (1) a Nevada statute bars GM from unfairly compensating Findlay and lowering a dealer's markup rate when an increase is requested; (2) GM must provide specific repair order citations for a dealer to conduct a thorough review of a denial for a rate increase; and (3) Findlay re-calculated its parts and labor rates utilizing Baird Letter 1's vague demands.

25. The BBPC Letter further stated: "It appears that after observing GM's actions in previous years . . . GM is reducing many dealers' parts markups and/or labor rates with respect to warranty submissions utilizing this tactic in <u>numerous states absent statutory authority</u>. It also is evident that GM has adopted this as an across-the-board policy in order to improperly reduce a dealer's markup/rate below its current markup/rate when seeking warranty uplifts. *This is deeply concerning on a national scale.*"

### *Baird Letter 2 – The Defendants' Defamatory Conduct*

26. In response to the BBPC Letter, Defendants engaged in conduct which intentionally, willfully and wrongfully, and without basis in fact, disparaged and defamed Plaintiff's reputation, industry standing, business and trade.

5

27. Specifically, Defendants responded to BBPC's letter by Baird sending another letter directly to Findlay—known by Defendants to be represented by counsel—on February 24, 2021 (the "Baird Letter 2").

28. Baird Letter 2 claimed the Nevada Statute should not be interpreted as stated in the BBPC Letter and that the claim that GM is reducing rates all across the nation is "irresponsible," "untrue," "and I can assure you, not happening."

29. Baird Letter 2 further maligns and defames BBPC as follows:

Not only does this group [meaning "BBPC"] perform a miniscule amount of business with GM dealers, and this may be because many dealers have been so dissatisfied with their prior results to the point where they questioned if they had been misled, (and those dealers have since taken their business elsewhere), they have no proof of rates being reduced amongst "many dealers". Just an absurd accusation. It is interesting though, as GM is familiar with over a dozen different vendors in this space, that these large disparities between the "requested rate" and the actual rate only typically occurs with <u>one</u> vendor. Just one, consistently. A dozen different vendors, with generally reliable and appropriate adherence to particular state laws, and just one vendor turns out these large disparities in the overall results. Odd, isn't it, these great variances between the requested rate and the actual result are so different, as in your case, and it is consistently seen with just one of these vendors? Out of over a dozen? Makes one wonder if it is being done intentionally in-an-effort to instigate an unnecessary dispute between GM and the dealer, which, of

6

course, does not benefit either of us. Again, we only see these large, unusual disparities from one, literally one group, amongst over a dozen different vendors in this space. So odd that it is only happening from one select group, that there are so many flaws with the calculation – a very noticeable and distinct pattern, and that just one vendor has such extreme different results on a continual basis and all of the others do not."

30. Baird Letter 2 also defames BBPC as follows: "I can assure you, other reputable vendors would have properly included batteries from the start, and, would not have falsely labeled selective repairs as 'service contract' with the sole purpose of trying to get them excluded from the calculation, and that is because performing the calculation with integrity, and providing the dealer with accurate results, is essential. . . Creating disputes is not in anyone's best interest."

31. Finally, Baird Letter 2 also states, in defamatory fashion: "Note, I am not endorsing any one company, but can speak to over a thousand different submissions – I know who is in this for the right reasons and honoring a dealer's simple request, performing the calculation correctly and in good faith, and who is not."

33. Defendants have per se defamed Plaintiff by communicating false and defamatory statements and communications in Baird Letter 2 concerning Plaintiff's services and products.

34. Defendants sent Baird Letter 2 with knowledge of its falsity, or with a reckless disregard for whether the statements contained therein were true or false.

7

35. The false and defamatory Baird Letter 2 was made willfully, maliciously, with knowledge of its falsity and with the intent of harming Plaintiff's reputation, industry standing, business and trade.

36. As a direct and proximate result of Baird Letter 2, Plaintiff has suffered, and continues to suffer, economic loss and harm to its reputation and business.

37. These statements of Defendants were known to be false when made or made with reckless disregard for the truth.

38. Defendants engaged in their defamatory conduct as a means to discourage dealers from employing BBPC, because BBPC has, among other things, uncovered GM's illegal practice of downwardly modifying reimbursement rates in many states.

39. Defendants seek to discourage franchised new motor vehicle dealers from using BPPC to handle vehicle warranty reimbursement issues, because BPPC is the only law firm with national experience with a vehicle warranty reimbursement submission program.

40. Further, non-lawyer vendors are not in-a-position to advocate for clients on legal matters.

41. GM's wrongful and defamatory conduct stems from its concern that BBPC's legal arguments (asserted on behalf of its franchised motor vehicle dealer clients) as to the legal flaws in GM's responses will threaten its continued illegal practice of unilaterally implementing downward modifications in a dealer's rates in reply to dealer request for increased reimbursement rates.

42. Thus, BBPC may be in the best position of all of the dozen vendors to vindicate the rights of dealers as against vehicle manufacturers such as GM.

8

43. GM selected Findlay as the recipient of its defamation of BPPC, because Findlay is a large dealer group with many dealerships located in Nevada and California.

44. Discouraging Findlay from doing business with BBPC would directly benefit GM by reducing its payouts via the vehicle warranty reimbursement program.

**Claim One**
**(Defamation/Libel)**

45. Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 44 herein.

46. On February 24, 2021, Defendants sent Baird Letter 2 to Findlay, a customer represented by BBPC, a law firm.

47. Baird Letter 2 contains statements and innuendo about BBPC.

48. Such statements and innuendo were false and were made with malicious intent.

49. These statements also were made in reckless disregard for the truth.

50. These statements harmed the special relationship between attorney and client.

51. The aforementioned words so communicated by Defendants concerning Plaintiff are defamatory in that they naturally and presumably accuse Plaintiff of conduct constituting immoral, illegal and unethical conduct both generally and in its business and were so understood by the persons who read them.

52. The aforementioned words so communicated by Defendants concerning Plaintiff are defamatory per se in that they are directed toward, and adversely impact directly upon, Plaintiff's business, trade, profession and means of livelihood, and were so understood by the persons who read them.

53. Defendants' statements constitute defamation per se because they impugn Plaintiff's honesty, trustworthiness, dependability, fitness and abilities by falsely charging Plaintiff with conduct that would tend to injure it in its trade or business.

54. As a direct and proximate result of the words so published by Defendants concerning Plaintiff, Plaintiff has been seriously injured in its reputation and good standing both generally and in its business.

55. By reason of the foregoing, Plaintiff has suffered the consequences of having such false and malicious statements brought to the attention of its customers, potential customers and others in the business and trade.

56. Accordingly, Defendants are jointly and severally liable to Plaintiff for defamation/libel in an amount to be determined at trial but believed to exceed ten million dollars ($10,000,000) in compensatory damages, plus interest, plus 2 million dollars ($2,000,000) in punitive damages.

57. Defendants also should be enjoined from making further defamatory statements about Plaintiffs.

**Claim Two**
**(Tortious Interference with Business Relations and Opportunities)**

58. Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 57 herein.

59. Findlay and BBPC entered a valid contract for representation.

60. Defendants were aware that Findlay had retained BBPC regarding Findlay's requests for warranty reimbursement rate increases.

61. To benefit themselves and to harm BBPC, Defendants attempted to induce Findlay to breach its contract with BBPC.

62. The conduct of Defendants was illegal, wanton and malicious, was specifically intended to interfere with BBPC's special business relationship with Findlay and has succeeded in doing so.

63. The conduct of Defendants harmed BBPC's goodwill.

64. The conduct of Defendants was intentional, reckless and without justification.

65. As set forth herein above, Defendants have intentionally, willfully and wrongfully, and without basis in fact, disparaged and defamed Plaintiff's reputation, industry standing, business and trade.

66. Defendants intentionally interfered with Plaintiff's business and future business opportunities by dishonest, unfair and improper means by posting false and defamatory communications concerning Plaintiff to the public and possibly other clients or potential clients of Plaintiff.

67. The actions of Defendants were accomplished by wrongful, dishonest, unfair and otherwise improper means.

68. The actions of Defendants permanently damaged Plaintiff's business relationship with its customers, potential future customers, business relationships in the industry and its good will and business reputation.

69. As a result of Defendants' actions, and the resulting negative impression created by Defendants concerning Plaintiff, Plaintiff has suffered substantial damages.

70. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, harm for which it is entitled to an award of monetary damages.

71. Defendants' conduct was intentional, willful, wanton and malicious, and was motivated by a desire to harm Plaintiff and an ill-will toward Plaintiff and/or a deliberate or reckless disregard for Plaintiff's business, for which Plaintiff is entitled to an award of punitive damages.

72. Accordingly, Defendants are jointly and severally liable to Plaintiff for defamation/libel in an amount to be determined at trial but believed to exceed ten million dollars ($10,000,000) in compensatory damages, plus interest, plus 2 million dollars ($2,000,000) in punitive damages.

73. Defendants also should be enjoined from making further defamatory statements about Plaintiffs.

### Claim Three
### (Permanent Injunction)

74. Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 73 herein.

75. In the event that (a) Baird Letter 2 remains published and (b) Defendants are permitted to continue to communicate and/or publish additional defamatory statements, communications, postings, messages and publications concerning Plaintiff, it will result in substantial losses to the Plaintiff.

76. In the event that (a) Baird Letter 2 remains published and (b) Defendants are permitted to continue to communicate and/or publish additional defamatory statements, communications, postings, messages and publications concerning Plaintiff, Plaintiff will suffer irreparable injury.

77. Plaintiff has no adequate remedy at law.

78. By reason of the foregoing, and pursuant to Federal Rules of Civil Procedure, the Plaintiff is entitled to a permanent injunction (a) directing Defendants to cause Baird Letter 2 and any other defamatory communication to be withdrawn, removed, and retracted and (b) permanently enjoining Defendants from publishing additional or other defamatory statements, communications, postings, messages and publications concerning Plaintiff.

## Prayer For Relief

WHEREFORE, Plaintiff demands judgment:

(1) Upon the First Claim for Relief, for damages in an amount to be determined at trial, but believed to exceed the sum of $10,000,000.00, plus interest, plus $2,000,000 in punitive damages.

(2) Upon the Second Claim for Relief, for damages in an amount to be determined at trial, but believed to exceed the sum of $10,000,000.00, plus interest, plus $2,000,000 in punitive damages.

(3) Upon the Third Claim for Relief, for a permanent injunction (a) directing Defendants to cause Baird Letter 2 and any other defamatory communication to be withdrawn, removed, and retracted and (b) permanently enjoining Defendants from publishing additional or other defamatory statements, communications, postings, messages and publications concerning Plaintiff.

(4) For the value of the costs and disbursements he incurs in connection with this action, including the value of its attorneys' fees.

(5) For such other and further relief as this Court deems to be just and proper.

Dated: Mineola, New York
March 18, 2021

BELLAVIA BLATT, P.C.

By: Leonard A. Bellavia (LAB 0780)
Steven Blatt (SHB 6792)
BELLAVIA BLATT, PC
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com
*Pro se* Plaintiff